**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Eckert/Wordell Architects, Inc., Eckert
Wordell, LLC, and West-Tech Design, Inc.,

        Plaintiffs,

              Civ. No. 12-968 (RHK/JJG)
v.              **ORDER**

FJM Properties of Willmar, LLC,

        Defendant.

---

  In this action, Plaintiffs Eckert/Wordell Architects, Inc. and Eckert Wordell, LLC (together, "Eckert Wordell") assert that they cannot be compelled to arbitrate a dispute with Defendant FJM Properties of Willmar, LLC ("FJM"), because FJM was not a signatory to the contract requiring arbitration.[1] Presently before the Court are the parties' cross-Motions for Summary Judgment. For the reasons that follow, the Court will grant FJM's Motion and deny Plaintiffs' Motion.[2]

  The pertinent facts are undisputed. This action arises out of the construction of an eye clinic and surgery center in Willmar, Minnesota. In late 2003, several eye doctors operating a business called Family Eye Center[3] retained Eckert Wordell, an architectural

---

[1] West-Tech Design, Inc. also is a Plaintiff in this action, but its claims are derivative of Eckert Wordell's and, hence, need not be separately discussed.

[2] As the Court does not believe oral argument would materially assist its resolution of the Motions, the hearing scheduled for May 13, 2013, is **CANCELED**.

[3] Family Eye Center was the *business* name of a medical practice operated by four doctors, which had a *legal* name Fischer Laser Eye Center LLC. In 2003, the doctors formed Family Eye

company located in Michigan, to design and construct the clinic. The agreement memorializing the project (the "Contract"), which Eckert Wordell drafted on a standard form, listed the "Client" and "Owner" as "Family Eye Center" and Eckert Wordell as the "Architect." The Contract contained an arbitration clause providing that "[a]ny claim, dispute, or other matter in question arising out of or related to [the Contract] shall be subject to arbitration," which was to be "decided . . . [under] the Construction Industry Arbitration Rules of the American Arbitration Association [AAA]."

In July 2009, an entity named FJM Properties, LLC ("FJM Properties") filed a breach-of-contract lawsuit in the Kandiyohi County, Minnesota District Court against Eckert Wordell, asserting that the clinic's HVAC system was improperly designed.[4] The Complaint specifically alleged that the Contract was between FJM Properties (not Family Eye Center) and Eckert Wordell, and Eckert Wordell admitted that allegation in its answer. Around the same time, FJM Properties filed an arbitration demand against Eckert Wordell with the AAA, asserting the same claims as in the lawsuit.[5]

On October 8, 2009, FJM Properties and Eckert Wordell entered into an agreement (the "Tolling Agreement"), pursuant to which they agreed to let a privately selected arbitrator (rather than the AAA) resolve their dispute. The Tolling Agreement's

---

Properties, LLC, as part of their plan to build the clinic at issue in this case, and Family Eye Properties, LLC later changed its name to FJM Properties of Willmar, LLC, the Defendant here.

[4] Nevertheless, all parties agree that no entity named FJM Properties, LLC exists or has ever existed. Rather, that is the doctors' "shorthand" for FJM Properties of Willmar, Inc., the instant Defendant.

[5] Both a lawsuit and an arbitration demand were filed in order to prevent a waiver of rights in the event the arbitration clause was found to be invalid or otherwise unenforceable.

recitals expressly provided that (1) FJM Properties "is the owner of" the eye clinic and (2) FJM Properties and Eckert Wordell were "bound [by the Contract] to arbitrate any dispute between them arising from the design of the" clinic. The parties then engaged in lengthy pre-hearing discovery and selected an arbitrator (Robert Huber, Esq.) to hear their dispute. The hearing was scheduled to commence on May 7, 2012.

Approximately one month before the hearing, however, Eckert Wordell notified Arbitrator Huber that it would not participate in the arbitration. It asserted that "FJM Properties, LLC is the named Claimant who commenced [the arbitration]," but "Eckert Wordell did not enter into any contracts with FJM Properties, LLC." In support, it pointed to the Contract, which showed that "Eckert Wordell was hired by and contracted with Family Eye Center," ostensibly "an entirely different entity" than FJM Properties. FJM Properties responded that it was the proper party to the arbitration because (1) it owned the property on which the clinic was located and (2) although the Contract was signed by Family Eye Center, (i) that was simply the business name of the doctors' practice, (ii) FJM Properties shared an address with Family Eye Properties, LLC, and (iii) the principals of all the various entities (Family Eye, Fischer Eye, FJM Properties, etc.) overlapped. It further asserted that Eckert Wordell had waived any objection to arbitration by participating in the proceedings for more than two years without asserting that FJM Properties was not a proper party, and that even if it were not a signatory to the contract, it could still compel arbitration with Eckert Wordell under an "alternative estoppel" theory. Ultimately, Arbitrator Huber determined that whether FJM Properties could compel arbitration with Eckert Wordell was a matter for him to decide, because the

Contract clearly expressed Eckert Wordell's intent to arbitrate questions of arbitrability. He refused to halt the proceedings and indicated that the parties could address these matters in their arbitration submissions.

Eckert Wordell then commenced this action, seeking a declaration that it need not arbitrate. It also sought an injunction enjoining the arbitration proceeding, but the parties later agreed to stay arbitration pending the outcome here. The parties now cross-move for summary judgment.[6] And despite Eckert Wordell's attempts to obfuscate the issues, the Court believes the pending Motions are easily dispatched for the reason given by Arbitrator Huber: the question of arbitrability has been delegated to him to decide.

There is no dispute that Eckert Wordell signed the Contract, which contains a broad arbitration clause. Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, threshold issues of arbitrability are for the *arbitrator* to decide if the agreement in question "clearly and unmistakably" delegated them to the arbitrator. E.g., First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 945-46 (1995); Fallo v. High-Tech Inst., 559 F.3d 874, 877 (8th Cir. 2009).[7] Contracting parties "clearly and unmistakably" delegate

---

[6] The standard for summary judgment on cross-motions is well-established and need not be repeated here. See, e.g., Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL 3613821, at *2-3 (D. Minn. Sept. 7, 2010) (Kyle, J.), aff'd, 414 F. App'x 882 (8th Cir. 2011) (*per curiam*).

[7] Eckert Wordell argues that the FAA does not apply here because "there was no contract or agreement between FJM and Eckert Wordell in the first place." (Pl. Mem. at 19.) But this misstates the issue. The question is not whether an agreement exists between FJM and Eckert Wordell, but rather whether FJM (or FJM Properties) can invoke the arbitration clause in the Contract between Eckert Wordell and Family Eye Center. In any event, even if Minnesota law were applicable, Minnesota generally follows federal law when analyzing arbitration issues. See, e.g., In re Wholesale Grocery Prods. Antitrust Litig., 707 F.3d 917, 922 (8th Cir. 2013); Hunter, Keith Indus., Inc. v. Piper Capital Mgmt. Inc., 575 N.W.2d 850, 854-55 (Minn. Ct. App. 1998).

arbitrability to the arbitrator when they incorporate into their agreement rules allowing the arbitrator to determine the existence or scope of his jurisdiction. E.g., Wootten v. Fisher Invs., Inc., 688 F.3d 487, 493-94 (8th Cir. 2012); Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 769 (8th Cir. 2011); Fallo, 559 F.3d at 878. And the Contract here incorporated the AAA's Construction Industry Arbitration Rules, which delegate to the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."

It makes no difference that the party seeking arbitration (whether FJM or FJM Properties) did not sign the Contract. As recognized in Contec Corp. v. Remote Solution Co., a non-signatory's attempt to invoke a contract's arbitration clause is "an issue that pertains directly to the . . . existence, scope or validity" of the arbitration agreement and, hence, is reserved for the arbitrator. 398 F.3d 205, 210 (2d Cir. 2004). Because Eckert Wordell nowhere challenges the arbitration clause's validity or the Contract itself, it simply "cannot disown its agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability." Id. at 211 (emphasis in original); accord, e.g., Apollo Computer, Inc. v. Berg, 886 F.2d 469, 473-74 (1st Cir. 1989); Haire v. Smith, Currie & Hancock LLP, __ F. Supp. __, 2013 WL 751035, at *6 (D.D.C. Feb. 28, 2013); Visibility Corp. v. Schilling Robotics, LLC, Civ. A. No. 10-12280, 2011 WL 5075816, at *4-5 (D. Mass. Oct. 25, 2011).[8]

---

[8] Contec noted that before deciding whether arbitration of arbitrability is appropriate, "a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement." 398 F.3d at 209. That is the case here. The instant dispute arises out of Eckert Wordell's work on the Willmar clinic, which was the subject of the Contract,

Eckert Wordell acknowledges Contec but offers a curious argument to avoid it. It argues that case is distinguishable because "FJM falsely asserted for years that [it] 'hired' and 'contracted' with [Eckert Wordell] and that [Eckert Wordell] 'breached the contract with FJM,'" but FJM has now "admitted it was not a party to the Contract." (Pl. Mem. in Opp'n at 9 (emphasis in original).) The Court is befuddled by this assertion. Eckert Wordell appears to be arguing it was somehow misled by FJM whether it was a party to the Contract. Yet Eckert Wordell *drafted* the Contract and has, at all times, had access to it. The Court simply cannot understand how it can credibly claim it "relied upon FJM's ongoing representations that it was the entity with whom Eckert Wordell had contracted." (Pl. Mem. at 2.) The Contract speaks for itself – a fact acknowledged by Eckert Wordell in its opposition brief. (Pl. Mem. in Opp'n at 9 (noting the Contract "makes no mention of FJM").) Its claim of being misled is simply unavailing.[9]

For all of these reasons, the Court need not (and does not) reach FJM's alternative arguments that Eckert Wordell (1) should be estopped from avoiding arbitration and (2) has waived any objection to arbitration through the Tolling Agreement, its assertions in litigation, and/or its participation in the arbitration for several years without objection. Where, as here, the contract containing the arbitration clause has not been challenged and

---

and there is no dispute that FJM owns the property on which the clinic is located. Furthermore, Family Eye Center (the Contract signatory) and FJM have the same address, there is substantial overlap between the principals of Family Eye Center and the principals of FJM, and Eckert Wordell acknowledges in its brief (Pl. Mem. at 10) that it received Contract payments from Fischer Laser Eye Center, LLC, which as noted above is closely related to FJM.

[9] It also makes no difference that the Contract purports to create no third-party rights. See Contec, 398 F.3d at 209 (noting that contract contained "both a prohibition on the assignment of rights under the [contract] and an exclusion of third party rights," but nevertheless determining that defendant had to arbitrate the question of arbitrability with third-party claimant).

that contract clearly delegates questions of arbitrability to the arbitrator, "waiver and estoppel [are] presumptively for the arbitrator" to decide. Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 394 (2d Cir. 2011). Accordingly, the Court agrees with Arbitrator Huber that "arbitrability in this case is an issue for the arbitrator, particularly because Eckert Wordell is undeniably a signatory to the [C]ontract . . . and all of FJM's claims against Eckert Wordell arise out of or are related to that contract." Whether FJM (or FJM Properties) may invoke the Contract's arbitration clause must be decided by him in the first instance.[10]

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**: (1) Plaintiffs' Motion for Summary Judgment (Doc. No. 52) is **DENIED**; (2) Defendant's Motion for Summary Judgment (Doc. No. 49) is **GRANTED;** and (3) Plaintiffs' Second Amended Complaint (Doc. No. 8) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: May 8, 2013    *s/ Richard H. Kyle*
　　　　　　　　　　　　RICHARD H. KYLE
　　　　　　　　　　　　United States District Judge

---

[10] The Court recognizes that it is requiring arbitration "at the behest of a defendant [that is] a non-signatory to the arbitration provision, who, the arbitrator ultimately may determine, is not entitled to enforce the arbitration provision." Nazar v. Wolpoff & Abramson, LLP, No. 07-2025, 2007 WL 528753, at *4 (D. Kan. Feb. 15, 2007), vacated on other grounds, 2007 WL 2875377 (D. Kan. Oct. 3, 2007). This potential anomaly, however, results directly from the Contract itself and its broad delegation of power to the arbitrator to determine his own jurisdiction.